UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAWRENCE HOUSTON HOBBS,

        Plaintiff,

                                   Case No. 22-cv-721-pp

   v.

DEB HAALAND,[1]
UNITED STATES DEPARTMENT OF THE
INTERIOR BUREAU OF LAND MANAGEMENT,
and UNITED STATES OF AMERICA,

        Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO CONSOLIDATE CASES (DKT. NO. 27) AND GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 14) WITH LEAVE TO AMEND**

---

On June 21, 2022, the plaintiff, who is representing himself, filed a complaint against his former employer, the United States Department of the Interior—Bureau of Land Management. Dkt. No. 1. The complaint asserts several claims, including conspiracy, failure to intervene, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and negligent hiring, supervision and training. Id. On November 18, 2022, the defendants moved to dismiss the complaint. Dkt. No. 14. The court will grant the defendants' motion and dismiss the complaint with leave to amend.

---

[1] Haaland was the Secretary of the Interior at the time the plaintiff filed his complaint. As of February 1, 2025, the Secretary of the Interior is Douglas J. Burgum. https://www.doi.gov/video/week-interior-february-7-2025.

1

## I. Background

As detailed in the court's July 11, 2023 order, dkt. no. 24, this is one of four cases the plaintiff has filed in this district since April 2022. Id. at 2 (citing Hobbs v. Willis, et al., Case No. 22-cv-467-pp (filed April 15, 2022); Hobbs v. Shesky, et al., Case No. 22-cv-492-pp (filed April 22, 2022 and closed November 7, 2022); Hobbs v. Sparks-Shesky, et al., Case No. 22-cv-680-pp (filed June 10, 2022); Hobbs v. Haaland, et al., Case No. 22-cv-721-pp (filed June 21, 2022)). According to the plaintiff's "Notice of Pertinent Litigation" filed with his complaint in this case, at the time he filed the complaint in this case, he had eight cases pending, all related to this one: three in the federal court for the Western District of Texas, one in the federal court for the Northern District of Illinois, one in the federal court for the District of Columbia, one in the federal court for the Eastern District of Missouri and two in this court. Dkt. No. 1-2 at 1–2. One court in the Western District of Texas consolidated four cases and dismissed them for failure to state a claim. Hobbs v. Stanley, Case No. 22-cv-342 (W.D. Tex.). The plaintiff has appealed the dismissal of those four consolidated cases to the Fifth Circuit. Hobbs v. Stanley, Case No. 24-50705 (5th Cir.). The other cases (save the three pending in this district) have been dismissed. Hobbs v. Cobb, Case No. 22-cv-1076 (D.C. Cir.) (dismissed May 6, 2022); Hobbs v. Bauch, Case No. 22-cv-1924 (N.D. Ill.) (dismissed June 7, 2022); Hobbs v. Doe Run Corp., Case No. 22-cv-612 (E.D. Mo.) (dismissed Sept. 30, 2023).

A.    The Complaint (Dkt. No. 1)

The complaint in this case names as defendants former Secretary of the Interior Deb Haaland, the United States Department of the Interior Bureau of Land Management and the United States of America. Dkt. No. 1 at 1. The forty-eight-page complaint alleges that the plaintiff suffered harassment, discrimination and retaliation while employed by the Bureau of Land Management (BLM). Dkt. No. 1. The plaintiff has alleged various constitutional violations, a violation of the Privacy Act of 1974, violations of federal employment laws, violations of various federal criminal statutes and several common law tort claims. Id. at 34–45.

The complaint alleges that the Department of the Interior's Bureau of Reclamation and later the BLM employed the plaintiff from April 2013 through June 2019. Id. at 15. As best as the court can determine from the complaint, the plaintiff alleges suffering "official misconduct, averse to the Plaintiff" while employed at the BLM from June 2016 to the end of 2017. Id. at 7. The plaintiff alleges that he is a white man over the age of forty who had "consistently received high performance ratings and rapid promotions of title, responsibility, and grade" until allegedly reporting this misconduct. Id. at 15-16. The plaintiff avers that he reported the "official misconduct," including "harassment, discrimination and retaliation," to his supervisors at the BLM some time prior to January 2018, but did not file a formal administrative agency complaint at that time due to fear of retaliation. Id. at 7.

3

The plaintiff avers that he was transferred to the BLM's Milwaukee office beginning in January 2018. Id. at 8. The plaintiff alleges that after he began working at the Milwaukee office, he learned that employees at that office had "been informed" of his prior complaints. Id. The plaintiff avers that on February 5, 2018, his new supervisors—Randall Anderson and Dean Gettinger— "unlawfully berated" him and threatened to terminate his employment if he continued engaging in "protected activity." Id. at 9. The plaintiff avers that at the same time, he was "falsely accused of sexual misconduct" by Kathrine Sparks-Shesky (presumably one of the plaintiff's coworkers, although the complaint does not describe Sparks-Shesky). Id. The plaintiff alleges that "immediately thereafter" he suffered "insubordination, harassment, discrimination and retaliation." Id. Specifically, the plaintiff alleges that BLM employees threatened to terminate him; made "perjurious, libelous, slanderous and defamatory statements;" altered his job assignments and responsibilities; made "unfavorable personnel decisions and performance ratings;; engaged in "unlawful entrapment" and violated the plaintiff's constitutional rights. Id.

The complaint alleges that on April 18, 2018, the plaintiff filed a complaint with the EEOC alleging violations of Title VII, the Age Discrimination in Employment Act (ADEA) and the First Amendment. Id. at 9-10. The complaint alleges that "the false accusation was, complicit with one or more individuals, acting in conspiracy with one or more other persons, for the deliberate and malicious purposes of harassment, discrimination, and retaliation." Id. at 10. (He does not identify the "false accusation;" it is not clear

4

whether he is referring to his allegation that Sparks-Shesky falsely accused him of sexual misconduct.) The plaintiff alleges that he subsequently filed more EEO complaints and amendments alleging on-going harassment, discrimination and retaliation "as elements of hostile work environment claim;" he says this occurred over the rest of the time he was employed in Wisconsin. Id. The plaintiff avers that on November 11, 2018, he accepted a transfer to another federal agency on November 11, 2018. Id. The plaintiff claims that agents of the BLM "unlawfully coerce[d], and/or conspire[d] with other Federal agents" to terminate his employment at that agency, for which the plaintiff filed a separate EEOC complaint. Id. at 13. He alleges that even after his "active Federal employment had ended," agents of the BLM continued to harass him and discriminate and retaliate against him, "which included unlawfully seeking a felony criminal conviction and unlawfully interfering in the EEOC administrative process." Id. The plaintiff further alleges that this constitutes tortious interference with his employment contract. Id. at 18-19.

The plaintiff alleges that while his administrative agency proceedings were pending, a grand jury in Val Verde County, Texas indicted him in December 2020 on "multiple state charges of felony credit card abuse," which he alleges was "brought forth by 'agents' of the DOI-BLM for purposes of harassment, discrimination, and retaliation, to obtain a selective, vindictive, and malicious prosecution." Id. at 14. The plaintiff recounts that he was arrested and incarcerated on March 27, 2021. Id. His indictment later was quashed and dismissed (he says that he defended himself). Id. The plaintiff

avers that after appealing the EEOC's decision to deny him an administrative hearing, he filed his legal actions in 2022. Id. at 14-15.

The plaintiff's causes of action are outlined in the lengthy "Legal Claims" section of the complaint. Id. at 34-45. Counts A-I through A-VIII allege constitutional violations based on BLM employees allegedly conspiring to deprive the plaintiff of his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights. Id. at 34-35. Count B-I alleges that BLM employees conspired to deprive the plaintiff of his privacy rights under the Privacy Act of 1974. Id. at 35. Counts C-I through C-IX allege age discrimination under the ADEA, sex and race discrimination under Title VII, discrimination based on the plaintiff's engaging in protected activity under Title VII, hostile work environment discrimination under the ADEA and/or Title VII and discrimination under the Freedom of Information Act for purposes of retaliation for failing to timely provide the plaintiff's new employer with employment records. Id. at 36-37.

Counts D-I through D-XIV allege several more conspiracy claims, including conspiracy to interfere with the plaintiff's civil rights; conspiracy to commit perjury; conspiracy to impede, interfere and retaliate against a federal employee; conspiracy to defraud; conspiracy to criminally coerce; conspiracy to commit wire and mail fraud and conspiracy to commit any other federal crime. Id. at 37-39. Counts E-I through E-XVI allege multiple counts of conspiracy to commit breach of contract, conspiracy to commit tortious interference with contract, conspiracy to commit tortious interference with the plaintiff's EEOC

proceedings and conspiracy to enter into a contract without good faith and fair dealing. Id. at 39-43. None of the conspiracy counts describe the alleged criminal agreement, the members of the alleged agreement (other than unnamed BLM employees), actions the alleged conspirators took in furtherance of the agreement or how those actions allegedly deprived the plaintiff of his rights.

The plaintiff also asserts several tort claims, including failure to intervene, intentional and negligent infliction of emotional distress, negligence, negligent hiring, supervision and training and "respondent superior." Id. at 43-45. The plaintiff asserts that he is entitled to compensatory, punitive and exemplary damages as well as attorneys' fees and costs (despite proceeding *pro se*). Id. at 45. He seeks damages in the amount of $10 million. Id. at 47.

> ### B. The Defendants' Motion to Dismiss (Dkt. No. 14)

On November 18, 2022, the defendants filed a motion to dismiss under Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6). Dkt. Nos. 14, 15. The defendants first argue that Title VII and the Civil Service Reform Act provide the exclusive remedy for the plaintiff's claims arising from his federal employment. Dkt. No. 15 at 4-5. They assert that the Civil Service Reform Act covers all "adverse personnel actions against" federal employees, including any adverse "appointment, promotion, discipline, or the like" that the plaintiff alleges. Id. at 5-6 (quoting United States v. Fausto, 484 U.S. 439, 443 (1988)). According to the defendants, Title VII governs any discrimination claims brought by federal employees. Id. at 6 (quoting Brock v. United States, 64 F.3d

1421, 1423 (9th Cir. 1995)). The defendants argue that all the plaintiff's claims relating to his employment must arise under these two statutes, and that the court must dismiss all his tort or state constitutional law claims. Id. at 6-7.

Alternatively, the defendants argue that the plaintiff's tort claims fail to plead a basis to overcome the United States' sovereign immunity, which bars suits against the United States for monetary damages. Id. at 7. To the extent the plaintiff is attempting to bring a claim under the Federal Tort Claims Act to circumvent sovereign immunity, the defendants argue that the plaintiff has not complied with the necessary administrative prerequisites for such a claim. Id. at 8. They argue that even if the plaintiff had met these prerequisites, his tortious interference claims must fail because the Federal Tort Claims Act does not waive sovereign immunity for intentional torts. Id. at 9. The defendants argue that sovereign immunity also bars the plaintiff's claims for constitutional violations against the United States. Id. at 9-10. They maintain that the court should dismiss these claims for lack of jurisdiction. Id. at 10.

As to the employment claims pled under Title VII and the ADEA, the defendants argue that the plaintiff did not sufficiently plead these claims. Id. at 10-11. The defendants assert that although the plaintiff's reports of "official misconduct" may, in theory, constitute protected activity for a retaliation claim, the complaint does not specify what misconduct the plaintiff reported, to whom or when. Id. at 11. According to the defendants, the plaintiff's bare allegations that he was "retaliated" against, without more detail as to what that retaliation entailed, are insufficient to state a claim. Id. at 12. As to the discrimination

8

claims, the defendants argue that the plaintiff has not identified any adverse actions he suffered at work or why he believes that he suffered those adverse actions because of his race, sex or age. Id. at 12.

The defendants argue that the plaintiff has not demonstrated that he exhausted his administrative remedies prior to filing this lawsuit. Id. The defendants argue that it is "nearly impossible" to parse whether the plaintiff actually presented any of the claims in the complaint to the EEOC, which means that the court cannot determine whether he exhausted his administrative remedies. Id. at 14-15.

The defendants also argue that the complaint violates Federal Rule of Civil Procedure 8(a)(2) because it does not contain a "short and plain statement" showing that the plaintiff is entitled to relief. Id. at 15. They argue that the court must dismiss the complaint because the plaintiff's allegations are "unclear as to who did what, when and what happened as a result." Id. (quoting Clervrain v. Godlewski, Case No. 22-C-417, 2022 WL 1015491, at *1 (E.D. Wis. Apr. 5, 2022)).

Finally, the defendants argue that the only appropriate defendant is the Secretary of the Interior in the Secretary's official capacity, not the agency itself or the United States. Id. The defendants argue that under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss the defendants other than the Secretary. Id.

In response to the motion to dismiss, the plaintiff filed a flurry of motions, which included a request for leave to file an oversized brief. Dkt. No.

9

20. The plaintiff's proposed opposition brief was fifty-eight pages long, far exceeding this court's thirty-page limit. Dkt. No. 19. The court denied that request and ordered that by September 15, 2023, the plaintiff must file an amended, compliant brief or advise the court that it should consider the first thirty pages of the brief as filed. Dkt. No. 24 at 21. The court ordered that should the plaintiff fail to do either of those things, it would elect the second option. Id. at 31. The plaintiff did not file amended response or ask the court to consider the first thirty pages of the brief as filed. As the court warned the plaintiff in its prior order, it will consider only the first thirty pages of the brief as filed. See id.

The reasoning in the plaintiff's opposition brief is, like his complaint, difficult to follow. He begins by laying out the standard for motions for summary judgment (which is different from the standard for a motion to dismiss)[2]. Dkt. No. 19 at 2-3. He then "summarizes" the allegations in his complaint, id. at 3-7, before re-stating the summary judgment standard, id. at 7-8. The plaintiff argues that the defendants' arguments about the length and confusing nature of his complaint are not valid legal arguments, asserting that they represent "their own lack of understanding the English language, even if presented in repetitive and pedantic nature." Id. at 8-9. He argues that the

---

[2] Fed. R. Civ. P. 56(a) allows a party to move for summary judgment if that party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment motions require the moving party to support the motion with record evidence, Fed. R. Civ. P. 56(c)(1), which means that summary judgment motions are filed after the parties have conducted discovery (not at the beginning of the case, before discovery has begun).

defendants did not properly admit or deny the allegations in the complaint (which defendants are required to do in an *answer*, but not in a motion to dismiss).[3] Id. at 9. The plaintiff states the summary judgment standard for the third time, id. at 10-11, before moving to strike the defendants' brief as "patently false," id. at 12.

The plaintiff argues that he has adequately plead his claims for relief. Id. He argues that it is "more than plausible" that BLM employees committed unlawful acts but does not explain why. Id. He argues that he cannot identify the co-conspirators and the nature of the conspiracy "due to the secrecy and obstruction of the government." Id. at 13. The plaintiff takes issue with the defendants not citing to "materials in the record" to support their assertions, again apparently misunderstanding the difference between a summary judgment motion and a motion to dismiss. Id. at 14. The plaintiff states that he is "incorporate[ing] by reference" his prior EEOC complaints and his litigation in other districts. Id. at 15-18.

It is not until page nineteen of his brief that the plaintiff begins his "memorandum of law opposing dismissal." Id. at 19. He asserts that his complaint is valid under Wisconsin law (even though he filed this complaint in

---

[3] Fed. R. Civ. P. 12(a)(1)(A) requires a defendant to file an answer to a complaint within twenty-one days after being served. But Rule 12(b) says that a defendant may raise certain affirmative defenses by motion *before* filing the answer. The rule contains a list of affirmative defenses that a defendant may raise by motion in lieu of an answer, including lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. The defendants in this case filed a motion to dismiss in lieu of an answer; only if the court denies that motion will the defendants be required to file their answer affirmatively admitting or denying the allegations in the complaint.

*federal* court, not Wisconsin state court). Id. The plaintiff argues that he has established standing to sue (the defendants have not argued that the plaintiff does not have standing). Id. at 20-23. The plaintiff argues that the length of his complaint is not grounds for dismissal. Id. at 23. According to the plaintiff, because he is proceeding *pro se*, his complaint is entitled to "liberal construction, inclusive of eliminating pagination limitations." Id. at 24. He justifies the length of his complaint by arguing that the discrimination he has suffered "is so extensive, so intensive, executed over a significantly extended period of time measured now in years, and as such harassment involved multitudes of discriminatory and retaliatory misconduct, additive pagination is justified." Id. at 25. The plaintiff argues that the details of the defendants' wrongdoing will be established by materials obtained in discovery. Id. at 27. Citing to Ashcroft v. Iqbal (which he characterizes as "eerily similar to this case instant"), the plaintiff states that his complaint "clearly alleges non-conclusory facts" which the defendants "have yet to deny." Id. at 28, 30. The remainder of the brief—which, as the court previously warned the plaintiff, it will not consider—proceeds much the same way. Id. at 31-37. The plaintiff attached to the brief an "amended complaint" which he did not seek leave to file. Id. at 37-58.

The defendants reply that the plaintiff's oversized brief essentially puts forward two arguments: that the plaintiff is entitled to "liberal construction" as a self-represented litigant and that he should be allowed to amend his complaint. Dkt. No. 21 at 1. The defendants argue that liberal construction and

repleading cannot save the plaintiff's non-employment claims from dismissal, nor can it save the claims barred by sovereign immunity. Id. at 2. The defendants contend that the complaint does not contain enough information to allow the reader to understand the factual underpinnings of any of his claims even under the most liberal construction.[4] Id. at 1-2.

C.     Plaintiff's Motion to Consolidate (Dkt. No. 27)

On May 15, 2024, the plaintiff filed a motion asking the court to consolidate this case with Sparks-Shesky, Case No. 22-cv-680. Dkt. No. 27. The plaintiff argues that the two cases have "common questions of law and fact" because the "facts underlying the cases are identical." Id. at 3. He argues that the two cases involve "common federal parties" and that they raise "substantially similar sets of constitutional and federal statutory claims based on the same incidents." Id. at 4. The plaintiff asks for sixty days to submit a combined amended complaint. Id.

The defendants oppose the motion. Dkt. No. 29. They argue that consolidation is improper because the plaintiff failed to sufficiently specify what

_____

[4] The plaintiff filed two sur-replies. Dkt. Nos. 25, 26. This court's local rules allow for a motion, the non-moving party's response and the moving party's reply. Civil Local Rule 7(a)-(c) (E.D. Wis.). They do not allow for sur-replies. Civil L.R. 7(i) states that any brief not authorized by the Federal Rules of Civil Procedure, the Local Rules or a court order "must be filed as an attachment to a motion requesting leave to file it." The plaintiff did not file a motion asking the court to allow him to file sur-replies; because he did not comply with the court's local rules, the court has not considered the sur-replies. See, e.g., Boustead v. Barancik, 151 F.R.D. 102, 106–07 (E.D. Wis. 1993) (finding that additional brief plaintiffs filed without seeking leave of the court should be stricken).

common issues of fact and law exist between this case and the other cases pending in this district. Id. at 3. The defendants also argue that there is currently no operative complaint in Spark-Shesky, Case No. 22-cv-680, so there is no way to determine whether there are common issues of law and fact between that case and this one. Id. at 3. The defendants argue that the court should first resolve the pending motion to dismiss in this case before considering consolidation. Id.

The plaintiff replies that the defendants' opposition was untimely. Dkt. No. 30 at 1-2. He argues that consolidation is proper because both cases involve employment discrimination committed against him. Id. at 3. The plaintiff says that he had intended to file one case in state court and one case in federal court and asserts that the defendants' removal of the state court case to federal court resulted in the current, dual-track litigation. Id. at 4. He asserts that it "should be '*obvious to judicial common sense*', to submit a consolidated amended complaint." Id. (emphasis in original).

## III. Motion to Consolidate Cases (Dkt. No. 27)

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all the matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." Hall v. Hall, 58i4 U.S. 59, 77 (2018) (citing 9A C. Wright & A. Miller, Federal Practice and Procedure §2283). Courts should

14

decline to exercise their discretion to consolidate if consolidation could cause confusion or prejudice. Estate of West v. Giese, Case Nos. 19-cv-1842, 19-cv-1844, 2020 WL 3895299, at *1 (E.D. Wis. July 1, 2020) (citing SJ Props Suite, BuyCo, EHF v. Dev. Opportunity Corp., Case Nos. 09-cv-533, 09-cv-569, 2009 WL 3790009, at *1 (E.D. Wis. Nov. 12, 2009)).

At this stage, consolidation is improper. As of the date of this order, there is no operative complaint in Sparks-Shesky, Case No. 22-cv-680. The court cannot determine whether there are "common question[s] of law or fact" between this case and a hypothetical amended complaint. The court regrets that due to caseload, the motion to dismiss this case has been pending for nearly two years. That is the court's responsibility, but the defendants in this case are entitled to resolution of their motion to dismiss before the court considers a motion to consolidate filed eighteen months after the defendants filed their motion to dismiss. The court will deny without prejudice the plaintiff's motion to consolidate.

## IV. Motion to Dismiss (Dkt. No. 14)

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. Bultasa Buddhist Temple of Chi. v. Nielsen, 878 F.3d 570, 573 (7th Cir. 2017). In evaluating a challenge to subject-matter jurisdiction, the court first must determine whether the movant has raised a factual or a facial

15

challenge. Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge contends that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. Id. (internal quotation and citation omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine whether subject-matter jurisdiction exists. Id. In contrast, a facial challenge asserts that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." Id. (internal quotation and citation omitted). In reviewing a facial challenge, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." Id.

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). And because subject-matter jurisdiction involves a federal court's power to decide a case, "it 'can never be forfeited or waived.'" Id. (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). See also Ware v. Best Buy Stores, L.P., 6 F.4th 726, 731 (7th Cir. 2021) ("'Subject-matter jurisdiction is the first issue in any case[,]' Miller v. Southwest Airlines Co., 926 F.3d 898, 902 (7th Cir. 2019)" and "'we have an independent obligation to determine that jurisdictional requirements are satisfied[,]' Knopick v. Jayco, Inc., 895 F.3d 525, 528 (7th Cir. 2018).").

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." The primary purpose of this rule "is to give defendants fair notice of the claims against them and the grounds supporting the claims." <u>Stanard v. Nygren</u>, 658 F.3d 792, 797 (7th Cir. 2011). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." <u>Id.</u> at 798 (affirming denial of leave to file a second amended complaint where the proposed amended complaint did not comply with Rule 8); <u>see also</u> <u>Caremark, Inc. v. Coram Healthcare Corp.</u>, 113 F.3d 645, 649 n.5 (7th Cir. 1997) ("[A] district court may dismiss a complaint for failure to comply with the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." <u>Gunn v. Cont'l Cas. Co.</u>, 968 F.3d 802, 806 (7th Cir. 2020) (quoting <u>Runnion <i>ex rel.</i> Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.</u>, 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing

17

Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all the factual allegations in the complaint as true," Ashcroft v. Iqbal, 556 U.S. 662 (2009), and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016).

B.    Subject-Matter Jurisdiction

1.    *Title VII and ADEA Claims*

The defendants ask the court to dismiss the plaintiff's Title VII and ADEA claims against the United States and the BLM under Rule 12(b)(1) because the United States and the BLM are not appropriate defendants for those claims. In a Title VII or ADEA case against a federal agency employer, the proper defendant is the agency head, not the agency itself. 42 U.S.C. §2000e-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant" in any Title VII action brought by a federal employee); Ellis v. U.S. Postal Serv., 784 F.2d 835, 838 (7th Cir. 1986) (applying the same requirement to ADEA claims). The proper defendant for the plaintiff's Title VII and ADEA claims is the Secretary of the Interior, who (as of February 1, 2025) is Douglas J. Burgum. The court will dismiss the Title VII and ADEA claims against the United States and the BLM.

2.    *Sovereign Immunity*

A greater jurisdictional issue for the claims against the United States and the BLM is sovereign immunity. Driftless Area Land Conservancy v. Valcq, 16 F.4th 508, 520 (7th Cir. 2021) (sovereign immunity is a jurisdictional issue). "Absent a waiver, sovereign immunity shields the Federal Government and its

18

agencies from suit." <u>Michigan v. U.S. Army Corps of Engineers</u>, 667 F.3d 765, 774 (7th Cir. 2011) (quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, (1994)). This means that the United States or a federal agency "cannot be sued unless it gives express consent to the jurisdiction of the court in which it is sued." <u>Dawson v. Great Lakes Educ. Loan Serv's, Inc.</u>, Case No. 15-cv-475, 2016 WL 426610, at *3 (W.D. Wis., Feb. 3, 2016) (citing <u>Hercules, Inc. v United States</u>, 516 U.S. 417, 422 (1996)).

It is the plaintiff's burden to demonstrate that the federal government has waived its sovereign immunity and consented to suit. <u>Macklin v. United States</u>, 300 F.3d 814, 819 (7th Cir. 2002). All purported waivers of sovereign immunity must be "strictly construed, in terms of [their] scope, in favor of the sovereign." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996). If the plaintiff fails to meet his burden of establishing that the federal government waived its sovereign immunity, the claims against it must be dismissed. <u>Macklin</u>, 300 F.3d at 819.

To carry his burden of establishing that the federal government has consented to be sued, the plaintiff must identify a federal statute in which "Congress has expressly and unequivocally waived [its] sovereign immunity." <u>Barmes v. United States</u>, 199 F.3d 386, 388 (7th Cir. 1999). Several of the plaintiff's claims sound in tort law. Dkt. No. 1 at 39–45 (tortious interference, failure to intervene, intentional and negligent infliction of emotional distress, negligence, negligent hiring and supervision and "respondent superior"). The plaintiff has not identified a statute under which the United States has waived its sovereign immunity for any such claims.

19

Though the plaintiff does not say so (except to state that his complaint "may be amended to include" such a claim, dkt. no. 1 at 43), the United States has waived its sovereign immunity for tort claims arising under the Federal Tort Claims Act (FTCA), 28 U.S.C. §2671 *et seq.* United States v. Mitchell, 463 U.S. 206, 212 (1983). But the FTCA explicitly bars suits against the United States for certain intentional torts, including tortious interference with contract and torts based on misrepresentation and deceit. 28 U.S.C. §2680(h). Midwest Knitting Mills v. United States, 741 F. Supp. 1345, 1353 (E.D. Wis. 1990), aff'd, 950 F.2d 1295 (7th Cir. 1991) ("any claims for tortious interference with contract are explicitly excluded from coverage by the FTCA."). To the extent the plaintiff meant to allege intentional torts under the FTCA, the claims he has asserted are excluded from the FTCA and barred by sovereign immunity. Nance v. United States, No. 22-CV-03861, 2023 WL 5211606, at *6 (N.D. Ill. Aug. 14, 2023) (dismissing complaint alleging fraud, tortious interference and civil conspiracy against the government as excluded from the FTCA).

The plaintiff's negligence-based claims may be actionable under the FTCA. But to maintain a suit for tort damages against the United States or its agencies, a plaintiff must comply with the requirements of the FTCA. The FTCA contains an exhaustion requirement. Section 2675(a) of Title 28 provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim

shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

In other words, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). The plaintiff has not pled that he presented his claim to the United States or the BLM, let alone that the claim was "finally denied by the agency in writing." The defendants assert that they did not receive any FCTA-related complaints until June 2022, when this case was filed, and that the "notice of litigation filed" or "notice of intent to sue" they received from the plaintiff were not considered administrative tort claims. Dkt. No. 15 at 8 (citing 15-1 at ¶¶6–7). Because the plaintiff failed to plead that he exhausted his administrative remedies under the FTCA, his tort claims against the United States and the BLM cannot proceed.

The plaintiff's remaining claims against the United States and the BLM are conspiracy to deprive him of constitutional rights, privacy rights and civil rights. Dkt. No. 1 at 34–35, 37–39. The defendants contend that the United States has not waived its sovereign immunity for these claims. Dkt. No. 15 at 10. To the extent that the plaintiff alleges substantive violations of civil rights laws, sovereign immunity shields the United States from liability under civil rights statutes including §§1983, 1985, and 1986. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989) (holding that sovereign immunity applies in §1983 cases); Davis v. U.S. Dep't of Justice, 204 F.3d 723, 726 (7th Cir.

21

2000) (stating that "[s]overeign immunity . . . bars §§ 1985(3) and 1986 suits brought against the United States"). Sovereign immunity also bars any cause of action for damages—the only form of relief the plaintiff requests—for constitutional violations by the federal government and its agencies. FDIC v. Meyer, 510 U.S. 471, 486 (1994). Because sovereign immunity bars the substantive claims, it also bars claims of conspiracy to violate these laws; even if it didn't, the court has found that the plaintiff did not comply with the FTCA's exhaustion requirement.

The plaintiff also asserts claims for conspiracy to violate criminal statutes for which there is no private right of action. Szplett v. Kenco Logistic Servs., LLC, Case No. 19 C 2500, 2020 WL 1939388 (N.D. Ill. Apr. 22, 2020) (quoting Kim v. Grand Valley State Univ., Case No. 16-2321, 2017 WL 8294004, at *1 (6th Cir. Dec. 22, 2017)) ("18 U.S.C. § 1621 . . . does not create a private right of action."); Eberhardt v. Braud, Case No. 16-CV-3153, 2016 WL 3620709, at *3 (C.D. Ill. June 29, 2016) (no private right of action under 18 U.S.C. § 1346); Jackson v. Goodwin, Case No. 23-CV-2007, 2023 WL 2534052, at *3 (C.D. Ill. Feb. 21, 2023) (no private right of action under 18 U.S.C. § 371); Bajorat v. Columbia-Breckenridge Dev. Corp., 944 F. Supp. 1371, 1377–78 (N.D. Ill. 1996) (mail and wire fraud statutes do not contain a private right of action); see also Chapa v. Adams, 168 F.3d 1036, 1038 (7th Cir. 1999) (explaining that private rights of action are rarely implied in criminal statutes). The two federal regulations under which the plaintiff purports to bring claims cannot support a private right of action. Federal regulations are promulgated

22

by the executive branch. "[O]nly Congress, not the Executive Branch, has the power to create new federal causes of action." Nexus Alarm & Suppression, Inc. v. MG Logistics, Inc., Case No. 20-CV-6043, 2021 WL 2156451, at *3 (N.D. Ill. May 27, 2021) (declining to find a private right of action in a federal regulation).

The complaint fails to establish a basis to overcome the United States' sovereign immunity. The court will dismiss the United States and the BLM as defendants for lack of subject-matter jurisdiction.

C.    Failure to State a Claim

1.    *Non-Employment Law Claims*

The defendants argue that federal employment laws—specifically the Civil Service Reform Act (CSRA) and Title VII—provide the exclusive remedy for claims arising out of the plaintiff's employment. Dkt. No. 15 at 4. The Supreme Court has held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976). The same reasoning requires that claims of age discrimination must be brought exclusively under the ADEA. Paterson v. Weinberger, 644 F.2d 521 (5th Cir. 1981) (citing Christie v. Marston, 451 F. Supp. 1142 (N.D. Ill. 1978)). To the extent the plaintiff alleges that there were any adverse actions taken against him for reasons other than his membership in a protected class, the CSRA provides a comprehensive remedial scheme for nondiscriminatory federal employment claims. See Bush v. Lucas, 462 U.S. 367, 388–89 (1983).

23

"Lower courts have applied the Supreme Court's exclusive remedy rulings to dismiss a federal employee's federal and state statutory and common law claims as well as constitutional Bivens-type claims arising out of an employment relationship when these claims were joined with Title VII and CSRA claims." Coe v. N.L.R.B., 40 F. Supp. 2d 1049, 1053–54 (E.D. Wis. 1999) (collecting cases); see also Richards v. Kiernan, 461 F.3d 880 (7th Cir. 2006) ("[T]he CSRA provides the exclusive remedy for an alleged constitutional violation . . . arising out of federal employment."); Rollins v. Marsh, 937 F.2d 134, 139–40 (5th Cir. 1991) (CSRA precludes employment-related FTCA claims by federal employees). In Coe, a federal employee claimed that federal officials had violated his constitutional and civil rights, discriminated against him in the terms and conditions of his employment and willfully and maliciously conspired to injure his reputation and profession in violation of Wisconsin law. Coe, 40 F. Supp. 2d at 1051. The court granted summary judgment on the plaintiff's constitutional claims, state law claims and civil rights claims under 42 U.S.C. §§1981, 1983 and 1985 because Title VII provided the exclusive remedy for all claims arising out of the plaintiff's employment. Id. at 1053.

Here, all the plaintiff's allegations are based on events that allegedly occurred in the course of his employment with the BLM. The plaintiff alleges that the wrongful conduct took place "pursuant to unwritten policies and practices of the DOI-BLM." Dkt. No. 1 at 35, 37, 39, 41. He repeatedly reiterates that the alleged wrongful conduct was perpetuated by the defendants' "employee/agents" in the scope of their employment. Id. at 34–45.

24

He specifically seeks to recover employment-related monetary damages, including back pay, front pay, lost annual and medical leave, benefits and retirement contributions. Id. at 47. The plaintiff's claims against the Secretary of the Interior are precluded by the CSRA, Title VII and the ADEA because those statutes provide the exclusive remedy for claims arising out of the plaintiff's employment. The court will dismiss the plaintiff's non-employment law claims.

2. <em>Employment Law Claims</em>

The plaintiff alleges that he suffered discrimination based on his age (over forty), sex (male), race/color/national origin (white) and in retaliation for engaging in protected activity. Dkt. No. 1 at 15, 36–37. He also alleges that he suffered a hostile work environment. Id. at 36–37. He invokes the ADEA, Title VII and the Lilly Ledbetter Fair Pay Act as the statutory bases for his claims. Id.

There are administrative prerequisites for employment discrimination suits brought by federal employees under Title VII and the ADEA. See 42 U.S.C. §2000e-16(c); 29 C.F.R. Part 1614; Hill v. Potter, 352 F.3d 1142, 1145–46 (7th Cir. 2003). The employee first must file a complaint with the agency, and may not file a civil action in court until he receives a notice of the agency's final decision on the complaint, the final decision of an Equal Employment Opportunity Commission administrative law judge if the employee exercised that option or after 180 days have passed from the filing of the complaint or appeal. 42 U.S.C. §2000e-16(c); 29 C.F.R. §1614.407.

25

The complaint states that the plaintiff initially filed an agency complaint on April 18, 2018 and that at the time of filing, over 180 days had elapsed without a final agency decision. Dkt. No. 1 at 3. The plaintiff also alleges that he filed his first formal complaint within forty-five days of the allegedly discriminatory activity and engaged in the "required administrative mediation process." Id. at 17–18. On this record, it is difficult for the court to determine whether the plaintiff *did* comply with all the administrative prerequisites to suit. However, construing the allegations in the light most favorable to the plaintiff at this early stage, the court may infer that he did file a complaint (or complaints) with the BLM, engaged in the required administrative procedures and waited the appropriate amount of time before filing the instant case.

The substantive allegations in the complaint are a different matter. "To succeed on a Title VII or ADEA discrimination claim, an employee must prove (1) that [he] is a member of a protected class, (2) that [he] suffered an adverse employment action, and (3) causation." Lewis v. Ind. Wesleyan Univ., 36 F.4th 755, 759 (7th Cir. 2022) (applying same standard to Title VII and ADEA claims). The plaintiff must show that the protected class (in this case, sex or race/color/national origin) was a "motivating factor in the defendant's challenged employment decision." Id. (quoting Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 337 (2020)); Huff v. Buttigieg, 42 F.4th 638, 645 (7th Cir. 2022) (federal employee ADEA claims do not require showing but-for causation, but rather that "age played a part in an employment decision").

The plaintiff alleges that he is "White/Caucasian . . . of European [descent]" and that he is male and over forty years old. Dkt. No. 1 at 15. These allegations, taken as true, are sufficient to plead that he is part of a protected class. But the plaintiff has not sufficiently pled that he suffered an adverse action or that his status as a white male of European descent over forty was a motivating factor in any employment decision. He alleges that he "began to be harassed, discriminated and retaliated against" but does not identify or describe the allegedly harassing, discriminatory or retaliatory actions, or who committed them. Id. at 16. He contends that he was forced to transfer to another BLM office through "a series of 'constructive discharges' in August of 2016, October of 2017 and January of 2018," but does not describe the actions that allegedly constituted constructive discharge. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. Iqbal, 556 U.S. at 678. The plaintiff must include specific facts about what his employer did that he believes constituted harassment, discrimination or retaliation. The plaintiff must identify and describe any actions that constituted "constructive discharge" or made him feel forced to transfer offices. He also must plead facts that give rise to an inference that his race or sex was a motivating factor behind those actions. "Though the Court liberally construes complaints brought under federal civil rights statutes, 'vague and conclusory allegations of race discrimination may not form the basis of a complaint.'" Johnson v. Nestle USA, Inc., Case No. 19-CV-07119, 2023 WL 6388130, at *4 (N.D. Ill. Sept. 29, 2023) (quoting Yaodi Hu v. City of

27

<u>Chi.</u>, Case No. 08C839, 2008 WL 5094157, at *2 (N.D. Ill. Nov. 26, 2008)). The complaint does not state a claim for race or sex discrimination under Title VII.

The plaintiff's retaliation claim fares no better. To plead a retaliation claim under Title VII, the plaintiff must "allege that [he] engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." <u>Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.</u>, 804 F.3d 826, 833 (7th Cir. 2015). Again, the complaint alleges only that the plaintiff engaged in "protected activity"; it does not describe that protected activity. Dkt. No. 1 at 27–28. The plaintiff alleges that he "reported certain official misconduct" but does not explain what that misconduct was, how or to whom he reported it or when. <u>Id.</u> A plaintiff "alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." <u>EEOC v. Concentra Health Servs., Inc.</u>, 496 F.3d 773, 781 (7th Cir. 2007) (citing <u>Kyle v. Morton High Sch.</u>, 144 F.3d 448, 454 (7th Cir.1998)). To state a claim, the plaintiff must identify what he said or did when he "reported official misconduct." He must describe what that alleged misconduct was. He must also explain what adverse action the defendant took against him and allege a causal link between that action and his protected activity. As written, the complaint does not state a claim for retaliation under Title VII.

The plaintiff's hostile work environment claim fails for similar reasons. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) [he] was subject to unwelcome harassment; (2) the harassment was based on

28

[his] national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." <u>Huri</u>, 804 F.3d at 833–34. The plaintiff has not described the allegedly harassing conduct. He has alleged that Sparks-Shesky falsely accused him of sexual misconduct, but has not identified Sparks-Shesky or explained how she is related to his workplace. To state a claim for a hostile work environment, the plaintiff must describe the allegedly harassing conduct and the environment, and he must explain how that conduct was related to his race, sex or some other protected characteristic. The court cannot assess from the complaint whether the alleged conduct was severe or pervasive enough to constitute a hostile work environment under the law.

In sum, the complaint is devoid of factual allegations to support any of the plaintiff's employment law claims. The court will give the plaintiff an opportunity to amend his complaint to add factual allegations supporting these claims.

## V.     Leave to Amend

Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain'* that amendment would be futile." <u>See</u> <u>Fields v. Miller</u>, Case Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing <u>Runnion *ex rel.* Runnion</u>, 786 F.3d at 519–20). "District Courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not

survive a motion to dismiss." <u>McCoy v. Iberdrola Renewables, Inc.</u>, 760 F.3d 674, 685 (7th Cir. 2014) (quoting <u>Gandhi v. Sitara Cap. Mgmt., LLC</u>, 721 F.3d 865, 869 (7th Cir. 2013)).

The court has concluded that sovereign immunity bars the claims the plaintiff attempted to bring against the United States and the BLM. If the plaintiff were to re-plead those claims in an amended complaint, they still would be barred by sovereign immunity, and the court still would lack jurisdiction to hear and decide them. Any amendment of those claims would not survive a motion to dismiss and thus would be futile. <u>O'Toole v. Acosta</u>, Case No. 14-CV-2467, 2018 WL 1469045, at *22–23 (N.D. Ill. Mar. 26, 2018) (denying leave to amend where plaintiff's intentional tort claims were barred by the United States' sovereign immunity); <u>Kuna-(Jacob) v. Hirshfeld</u>, Case No. 16-CV-03336, 2017 WL 8792720, at *2 (C.D. Ill. Sept. 29, 2017) (same). The court will not allow the plaintiff to amend his claims against the United States and the BLM.

The court has also determined that federal employment laws provide the exclusive remedy for the plaintiff's claims. For the plaintiff to re-state his conspiracy and tort claims in an amended complaint would be futile because those restated claims would arise from the same set of facts—his employment—and thus would be precluded because the CSRA, Title VII and the ADEA provide the exclusive remedy for such claims. The court will not allow the plaintiff to amend his non-employment law claims.

The court will give the plaintiff an opportunity to amend his complaint against *only* the Secretary of the Interior—now Douglas J. Burgum—to bring *only* federal employment law claims. The court is sending the plaintiff a blank amended complaint form. He should write the case number—22-cv-721—in the space where it says "Case Number" on the first page. He may use the lines on pages 2-3 to describe the facts that give rise to his claims against Burgum. If he needs more space, the plaintiff may use *no more than five, double-spaced additional pages* to lay out the facts of his claims against the defendant. The plaintiff may not include any claims or defendants in his complaint that the court has dismissed with prejudice. The plaintiff may only include his federal employment law claims against Douglas J. Burgum, the current secretary of the federal agency that employed him.

Much of the plaintiff's lengthy complaint consists of recitations of federal or state law; Rule 8(a) does not require a complaint to recount quote statutes. The complaint cites cases; Rule 8(a) does not require complaints to cite or quote from cases. The complaint contains legal arguments, but a complaint is not a brief. A plaintiff need not—and should not—include legal arguments in a complaint A complaint needs only to state the "who, what, when, where and how" of a plaintiff's claims. The plaintiff should explain what the defendant did to harm him, when the defendant did it where the events occurred and how the defendant harmed him.

The court advises the plaintiff that the amended complaint will supersede—take the place of—the original complaint. That means that the

amended complaint must be complete in itself—it must contain all the facts that the plaintiff wants the court to consider. The plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F3d 1054, 1056-57 (7th Cir. 1998). When a plaintiff files an amended complaint, it is as if the "prior [complaint] is in effect withdrawn as to all matters not restated in the amended pleading[.]" Id. at 1057 (citation omitted). The court will not consider any facts that the plaintiff does not include in the amended complaint.

## VI. Conclusion

The court **DENIES** the plaintiff's motion to consolidate cases. Dkt. No. 27.

The court **GRANTS** the defendants' motion to dismiss the complaint. Dkt. No. 14.

The court **ORDERS** that all claims against the United States and the Bureau of Land Management are **DISMISSED WITH PREJUDICE**. The court **ORDERS** that those defendants are **DISMISSED**.

The court **ORDERS** that the conspiracy, tortious interference, failure to intervene, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring, supervision and training and *respondeat superior* claims against Deb Haaland are **DISMISSED WITH PREJUDICE**.

The court **ORDERS** that the Title VII and ADEA claims against Deb Haaland are **DISMISSED WITHOUT PREJUDICE**.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, then by the end of the day on **March 14, 2025** he must file an amended complaint that complies with this order. The court **ORDERS** that the plaintiff must file the amended complaint *in time for the court to receive it by the end of the day on March 14, 2025.* If the court does not receive an amended complaint by the end of the day on March 14, 2025, the court will dismiss this case without further notice or hearing.

Dated in Milwaukee, Wisconsin this 14th day of February, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**